VAN DEUSEN *v.* INGRAHAM,

PRINCIPAL AND AGENT—AUTHORITY TO COLLECT MORTGAGE.

The agency of a firm of attorneys to receive payment of the principal of a mortgage not in their possession, making a payment to one of them, who misappropriates the proceeds, binding upon the mortgagee, is not established by evidence that, without any request by the mortgagee, they had collected the interest on the mortgage, and that, a short time before the payment, some correspondence had passed between them with reference to having the mortgagor procure a renewal of the insurance, where the loan was procured by them for the mortgagor, who paid them by a note included in the security of the mortgage, and which, according to their understanding, also covered their services in collecting interest, and it was the custom of the firm to see that the parties for whom they procured mortgage loans kept up their insurance.

Appeal from Van Buren; Buck, J. Submitted June 10, 1896. Decided June 30, 1896.

Bill by Cynthia A. Van Deusen against Frank E. Ingraham and others to foreclose a mortgage. From a decree dismissing the bill, complainant appeals. Reversed.

*E. A. Crane*, for complainant.

*Osborn, Mills & Master*, for defendants.

HOOKER, J. Crane & Breck, lawyers, and copartners, respectively resided at Kalamazoo and Paw Paw. They engaged somewhat in the business of negotiating loans. Early in 1889, Bushnell and Ingraham applied to Breck for a loan of $1,500. Breck informed Crane, and he spoke to Dr. Van Deusen, the complainant's husband, who gave him encouragement that his wife would make the loan. Crane thereupon wrote to Breck, as follows:

"If I understood you correct, those parties west of Berlamont are to come in next week to make their papers. I think we will be safe in making them to Mrs. Van Deusen, as I think they will have the money by the time it will be necessary. I shall want the insurance and everything in good shape when I present them."

Breck caused the parties to execute a mortgage to the complainant, and had it recorded. It was acknowledged January 11th, and it was delivered through Crane. On January 16th Crane wrote to Breck as follows:

"*Dear Breck:* Dr. Van Deusen gave me a check for the Ingraham loan, and I have deposited $1,500 to your credit at the Michigan Nat. Bank. I gave him the note and mortgage, and he has just returned insurance policy, and calls my attention to the fact that the policy runs to Bushnell, and the mortgage note is given by Ingraham. Of course, I could not explain how it happened. Also, that the policy describes the premises as on section 23, 1, 14, while the land is on 18. I will inclose policy. You get it fixed right, and explain how it comes that Ingraham gives this mortgage. I supposed Bushnell was the owner of the land. I also send you the Palmer policy you wanted.

"You may assign Knafsker mortgage to Louisa F. Trask. Get papers here as soon as you can, and I will get the money.

"Send me your duebill, also, for balance as per books."

The following statement was forwarded by Breck to Crane:

|  |  | |
|---|---:|---:|
| PAW PAW, MICH., 9 ——. | | |
| Amount Ingraham mortgage | $800 | 00 |
| Interest to date | 70 | 75 |
| Amount Bushnell mortgage | 692 | 00 |
| Amount interest to date B. mortgage | 61 | 20 |
| Total | $1,623 | 95 |
| Expenses of loan | 3 | 00 |
| Total | $1,626 | 95 |
| Less amount of mortgage | 1,500 | 00 |
| Amount Ingraham paid | $126 | 95 |

The mortgage secured two notes, one of $1,500, running to the complainant, and the other reading as follows, viz. :

"E. A. CRANE,                    GEORGE E. BRECK,
    Kalamazoo.                        Paw Paw.
        LAW OFFICE OF CRANE & BRECK.
"$75.        PAW PAW, MICHIGAN, January 12, 1889.

"For value received, I promise to pay Crane & Breck one per cent. per annum on fifteen hundred dollars, payable annually, for five years from date. This note is secured by real-estate mortgage of even date herewith, and collateral hereto, on land in section 23, town 1 south, of range 15 west, Van Buren county, Michigan. It is agreed that, if any interest as above provided shall become due and remain unpaid for 60 days, the whole amount of said interest may, at the option of the holder hereof, be declared due and collectible at once. This note is given as one per cent. per annum on fifteen hundred dollars for five years, and it is agreed that, should any payments be made on said mortgage before five years, only one per cent per annum upon the amount unpaid shall be due hereon, and that one per cent. shall be payable until all is paid, be the time five years or more."

The interest of Crane & Breck was never assigned to the complainant. Dr. Van Deusen, who acted as agent of his wife, knew that the mortgage secured the note for $75. Dr. Van Deusen had the custody of the mortgage and the $1,500 note, and Crane seems to have held the $75 note. It appears that the Van Deusens had previously loaned money, upon applications made through Crane & Breck. Dr. Van Deusen knew they were partners, and had an office contiguous to Crane's office, and kept his papers in Crane's safe. Among them was this mortgage. Crane had access to the compartment in which they were kept. Interest was paid to Breck, who forwarded it to Crane, who turned complainant's share over to Dr. Van. Deusen; Crane indorsing the same upon the notes. A time before the mortgage matured, Ingraham and Bushnell approached Breck about a new loan, at a lower rate of interest. Breck appears to have written to Crane about it, who replied as follows:

"So far as Ingraham-Bushnell mortgage is concerned, it is useless to talk about getting money at less than 7 per cent. net to the mortgagee. I suppose they are paying us a commission note in addition to that. I can do nothing for them, as I certainly will not be annoyed with attending to these collections for anything less than we have been getting. *  *  *"

Subsequently Crane and Breck met Ingraham, who testified that the following conversation occurred:

"Mr. Crane and Breck came up there. I was drilling oats, and Mr. Crane said to me, 'Ingraham, what is to do about this interest?' 'Well,' I says, 'Mr. Crane, unless you can make this a cent less, I will have to make a change.' 'Well,' he said, 'I don't think the parties will do it; but,' he says, 'you need be in no hurry about this interest. You can let it run until fall, then come out and make new papers, and you can have all the time you want.' I says, 'Thank you; if I can get the money, I shall make the change.' And he drove away."

Ingraham thereafter arranged with Wiggins for a loan from a fund which he held for a Mrs. Fuller and her children, and Wiggins sent a check to the First National Bank of Paw Paw. The business was done with Breck at his office. Breck called at the bank and told the cashier that he had discharged the mortgage, and obtained the money  Breck mailed to Ingraham the $75 note, which he obtained from Crane, and what purported to be the $1,500 note, and discharged the mortgage by signing an acknowledgment of full payment of the same in the margin of the record. He sent $72 to Crane, who paid it to Van Deusen, and indorsed it on the complainant's note. Breck converted the balance, which fact was not discovered until after his death, in 1894.

The foregoing is substantially all of the testimony tending to show that Crane & Breck were agents of the complainant, except the fact that Breck wrote to Crane about Ingraham's insurance policy on April 27, 1894, a short time before Wiggins sent his check to the bank at Paw Paw. In this connection Crane testified that he did not know that he asked Breck to look it up, and that—

"I have made a practice of looking over all insurance policies in my office on the first day of each month, as I have a great many of them, and those that are to expire during that month I calculate to follow the parties up, and see that they get new policies, and my recollection is that something of that kind happened with reference to the Bushnell policy."

In our opinion, the testimony fails to show that Crane & Breck were agents of the complainant. They obtained the loan for Ingraham and Bushnell, who paid them for it, by a note for $75. Interest was paid Van Deusen through them, but it does not appear that Van Deusen paid for or requested it, and Crane's letter indicates that he understood that the mortgagors paid for that service by the $75 note when he refused to do it for less.

The decree of the circuit court is reversed, and the complainant will take a decree as prayed in the bill, with costs of both courts.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred. GRANT, J., did not sit.